OPINION
On April 18, 1994, at approximately 4 a.m., several armed men broke into an apartment located at 1926 Maryland Avenue and opened fire. The apartment was the home of Nelson Price, a known drug dealer, and at the time of the incident a large group of people were present socializing, drinking, and taking drugs. The men were dressed in black, wore masks over their heads, and at least one carried a shotgun. Upon gaining entry, the men ordered everyone to get down on the floor. The defendant, who was armed with a shotgun, shot and killed James McKinney as he sat on a couch by the front door. Thereafter, the apartment was riddled with bullets from at least two other weapons, seriously wounding a number of those inside the apartment.
On April 28, 2000, the Franklin County Grand Jury issued a thirteen count indictment against defendant charging him with two counts of aggravated murder, five counts of attempted aggravated murder, five counts of felonious assault, and one count of aggravated burglary. The two counts of aggravated murder were accompanied by capital specifications, while all counts carried firearm specifications.
At trial, the state relied upon the testimony of several individuals who were present at the time of the shooting, and who identified defendant as the man who shot and killed James McKinney. On August 4, 2000, a jury returned a verdict finding defendant guilty of aggravated murder, and murder, as well as guilty of the eleven remaining counts and specifications. Following his mitigation hearing, defendant was sentenced to thirty years to life for aggravated murder, ten to twenty-five years for the five counts of attempted aggravated murder, ten to twenty-five years for aggravated burglary, and one to three years on the firearm specifications. Each of these sentences were ordered to run consecutively. Defendant now raises the following ten assignments of error:
 [1.] The trial court erred and deprived Mr. Dawson of his right to a fair trial when it permitted the prosecution to present evidence implicating Mr. Dawson as a member of the "X-Clan" street gang, in contravention of Ohio Evid.R. 403(A), 404(B), Ohio R.C. 2945.59, and the Due Process Clauses of the Fifth
and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.
 [2.] Mr. Dawson was deprived of his right to a fair trial based on the egregious, pervasive prosecutorial misconduct which occurred in the trial court proceedings, in contravention of his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
 [3.] Mr. Dawson was deprived of his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution, based on the unjustifiable pre-indictment delay.
 [4.] The trial court erred when it permitted the state to introduce inadmissible, prejudicial hearsay statements in contravention of Ohio Evid.R. 802 and 803, and the Confrontation and Due Process Clauses of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 [5.] The trial court erred when it admitted into evidence a statement obtained from Mr. Dawson in contravention of his Privilege against Self Incrimination, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
 [6.] The trial court erred when it entered the judgment of conviction in the absence of sufficient evidence to establish Mr. Dawson's guilt, and when Mr. Dawson's convictions were against the manifest weight of the evidence. These errors deprived Mr. Dawson of his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
 [7.] The trial court erred when it refused to give trial counsel's requested jury instruction on witness testimony that is offered pursuant to a plea agreement. This error deprived Mr. Dawson of his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
 [8.] The trial court erred when it refused to require the State to provide Mr. Dawson with an accurate witness list, and when it failed to require the State to provide Mr. Dawson with exculpatory evidence in a timely manner. The discovery violations that occurred and went uncorrected deprived Mr. Dawson of his right to a fair trial, as guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.
 [9.] Mr. Dawson was deprived of his right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
 [10.] The trial court erred in overruling Ronald Dawson's objections, and admitting evidence of Nelson Prices's hearsay statement to Kevin Morton. The admission of this evidence contravened Mr. Dawson's rights under Ohio Evid.R. 403(A), 802, and 803, and the Confrontation and Due Process Clauses of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
In his first assignment of error, defendant argues that the trial court erred when it failed to exclude "other acts" evidence. Specifically, defendant maintains that any and all unfavorable evidence showing his association with a street gang known as the "X Clan" should have been kept from the jury pursuant to Evid.R. 403(A), 404(B), and R.C. 2945.59.
Evidence of "other acts," separate and apart from those for which the defendant stands trial, are generally not admissible for the purpose of showing the defendant's character or propensity to commit crime. State v. Mann (1985), 19 Ohio St.3d 34, paragraph one of the syllabus; State v. Curry (1975), 43 Ohio St.2d 66; and Evid.R. 404(B). However, such evidence may clearly be used to prove other things such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id.
It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59, 68, quoting State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is clearly and palpably unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Moreover, the improper use of "other acts" evidence necessitates reversal only when there is a "reasonable possibility that testimony contributed to the accused's conviction." State v. Treesh (2001), 90 Ohio St.3d 460, 483, quoting State v. Lytle (1976), 48 Ohio St.2d 391, paragraph three of the syllabus.
In his first assignment of error, defendant complains about four categories of evidence which he characterizes as "other acts" evidence. These are: (1) general evidence regarding the "X Clan"; (2) evidence of defendant's "gang related" activity; (3) evidence of defendant's reputation in the community; and (4) a pair of black boots and a bullet proof vest recovered from defendant after the shooting.
We have carefully and fully reviewed the trial transcript paying particular attention to those portions cited by defendant. Having done so, we find that the boots and vest recovered from defendant, as well as the general evidence regarding the "X Clan," is not "other acts" evidence proscribed by Evid.R. 404(B). See Robb, supra, at 68. Further, we find no error in the admission of evidence which generally spoke of the defendant's reputation and affiliation with the "X Clan," as well as a few of its alleged exploits.
While evidence of defendant's reputation and affiliation with the "X Clan" would have been inadmissible if its only purpose was to establish that defendant committed these crimes, State v. Kelly (Aug. 22, 2000), Franklin App. No. 99AP-1302, unreported, in this case, the challenged testimony was relevant for a number of other reasons. First, most of the eyewitnesses testified that they did not initially cooperate with the investigation of the shooting, and did not identify defendant as the individual who murdered McKinney until many years later because they were afraid of defendant and of retaliation by him or other members of the "X Clan." Indeed, the trial court made it perfectly clear that such evidence would be highly relevant if defendant attacked a witness's credibility on this basis. When defendant did so, the trial court properly allowed the state to use the challenged testimony to explain why the witnesses had been afraid. Second, testimony that a sawed-off shotgun had been in defendant's possession, or the possession of a fellow gang member with defendant the day after the murder, was relevant as it tended to show that defendant had access to, and may have used that weapon the night before. Third, evidence regarding the "X Clan's" symbols, beliefs, and dress was relevant to the group's beliefs and traditions, including the habit of its members to dress in black. Robb, supra, at 69. Finally, the evidence was relevant to show a common purpose, which was import as defendant was prosecuted under a complicity theory on the attempted murder charges. Id.
In this case, we believe the trial court properly applied the balancing test called for in Evid.R. 403. Pursuant to Evid.R. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. This is a heavy burden, as the mere existence of prejudice alone is not sufficient to justify the exclusion, and although defendant believes the trial court should have reached a contrary conclusion, we are unable to conclude that the trial court abused its discretion. See Sage, supra. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant attacks the assistant prosecutors, accusing them of engaging in misconduct. The test used to determine the existence of prosecutorial misconduct is whether the conduct of the prosecutor was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219. As such, misconduct is not grounds for reversal unless it is shown that the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, at 266.
In support of this assignment of error, defendant claims the prosecutor made improper comments during the course of closing argument.[1] The Ohio Supreme Court has noted that "[c]onsiderable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court." Id. at 269, quoting State v. Pustare (1973), 33 Ohio App.2d 305,312. Closing argument must be reviewed in its entirety to determine whether the remarks were prejudicial. State v. Keenan (1993),66 Ohio St.3d 402, 410. Having done so, where it is apparent from the facts and circumstances of the case that the discretion of the trial court has not been abused, a reviewing court will not interfere. Golamb v. Layton (1950), 154 Ohio St. 305, paragraph four of the syllabus.
We have carefully reviewed the entire transcript of defendant's trial and are unable to conclude that any of the comments made during the course of the state's closing argument denied defendant a fair trial. Although defendant contends that certain remarks were improper, that contention is largely dependent upon defendant's perspective and interpretation. Moreover, prior to closing argument, the court specifically and properly explained to the jury that a closing argument was opinion, not evidence, and not fact. We find no reason to believe that the jury failed to heed the court's instruction. State v. Stallings (2000), 89 Ohio St.3d 280. Stated alternatively, when reviewed in context, the prosecutor's remarks, even if improper, do not rise to the level at which we could find that defendant would not have been convicted in the absence of those remarks. See State v. Tumbleson (1995),105 Ohio App.3d 693, 700. Accordingly, defendant's second assignment of error is overruled.
In his third assignment of error, defendant claims that he was denied his constitutional right to due process as a result of the passage of time between the murder and his indictment. A two-part test is used to determine whether a pre-indictment delay has deprived a defendant of due process. First, a defendant must demonstrate that he or she was prejudiced by the delay. Second, the court must determine whether there existed any justifiable reason for the delay. An extended delay is not per se prejudicial, nor is speculative prejudice sufficient. State v. Whiting (1998), 84 Ohio St.3d 215. See, also, State v. Luck (1984),15 Ohio St.3d 150; and State v. Lovasco (1977), 431 U.S. 307.
Defendant's arguments notwithstanding, defendant did not raise a due process claim below, and, consequently, there is no proper record or factual findings upon which to base a determination at this time. As noted, defendant has the burden of proving actual prejudice resulting from the delay. Moreover, assuming defendant was able to demonstrate actual prejudice, the state has not had an opportunity to demonstrate that the delay was justified. We also reject defendant's claim that the failure to raise this claim at trial constituted plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767. Plain error does not exist unless an appellant establishes that the outcome of the trial clearly would have been different but for the alleged error. State v. Waddell (1996),75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992), 81 Ohio App.3d 644, 647. Seeing no reason to do so, defendant's third assignment of error is overruled.
In his fourth assignment of error, defendant complains the trial court erred when it allowed the introduction of inadmissible hearsay uttered by Nelson Price, the occupant of the apartment where the shooting occurred. Particularly, defendant claims that it was error for the court to admit testimony that Price identified defendant as one of the assailants.
According to the Ohio Supreme Court, testimony concerning a statement or declaration of another individual is admissible under an exception to the hearsay rule for spontaneous exclamations:
 * * * [W]here the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. [State v. Duncan (1978), 53 Ohio St.2d 215, paragraph one of the syllabus.]
In State v. Cornell (1998), 129 Ohio App.3d 106, we set forth the standard by which we examine the admission of a hearsay statement:
 In reviewing the trial court's application of [the State v. Duncan] test, we note initially the rather narrow standard of review by which we are bound. Relying upon Potter, supra, and its progeny, the Supreme Court of Ohio has consistently adhered to a fairly discretionary "reasonableness" standard. In Taylor, 66 Ohio St.3d at 304-305 * * * the Supreme Court of Ohio rejected the more restrictive "abuse of discretion" standard; instead, the court stated:
 "There may be instances in which a decision to reject such a declaration will appear to a reviewing court almost as reasonable as a decision to admit it; and vice versa. We certainly do not believe that the decision of the trial judge in such an instance should be disturbed."
 "* * * [T]he trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision." [Emphasis sic., id. at 112-113, quoting Potter v. Baker (1955), 162 Ohio St. 488, 499-500.]
In this case, defendant argues that the trial court incorrectly concluded that Nelson Price was in a position to observe the break-in and murder. He also contends that it should be presumed that Price was under the influence and therefore unable to appreciate the event. Finally, defendant claims that Price's statements were made after reflection and are, therefore, inherently unreliable. While defendant is entitled to his opinion, based upon the evidence of record, his opinion is at best arguable. Having reviewed the challenged statements in light of the trial court's circumspect analysis, we find the court's decision to be entirely reasonable.
There was ample testimony that Price was in the front room of the apartment when the door was kicked open and the shooting began. Although there was some indication that Price might have been going to, or leaving the kitchen at that time, the apartment was very small, and it was possible to see the front room from inside the kitchen. As for defendant's claim that Price was in "all likelihood" intoxicated at the time of the murder, defendant offers no evidence in support of this claim. As for defendant's claim that Price's statements were made after reflection, this claim amounts to no more than opinion. Again, there was ample testimony that Price was, in the words of at least one witness, "hysterical" at the time that he identified defendant. There was also ample evidence that Price as well as several other witnesses, had known defendant from childhood and recognized his build and voice. As such, defendant's fourth assignment of error is overruled.
In his fifth assignment of error, defendant argues that the trial court should have suppressed a comment that he made while he was waiting to be interviewed by detectives after his arrest. On April 18, 2000, defendant was arrested and transported to Columbus Police Headquarters for questioning. At the time of his arrival, there were no available interrogation rooms, so defendant was placed in a holding area where he was watched by two officers. One of these officers, Officer Keith Kise, knew defendant, and the two engaged in general conversation. At that time, defendant had not yet been questioned by detectives and had not yet been officially advised of his Miranda rights.
According to Officer Kise, during their conversation, defendant asked if Kise would tell him the name of their "source." Officer Kise explained that the detectives would not likely divulge their source, at which time defendant stated that Detective Kallay had earlier implied that it was one of his friends, and that all he had to do is "whack all of his friends" and he would be all right. (July 12, 2000 Tr. at 88.) Defendant claims that this statement was the product of impermissible interrogation and, therefore, should have been kept from the jury pursuant to Miranda v. Arizona (1966), 384 U.S. 436.
For purposes of Miranda, interrogation means not only express questioning, but also words or actions other than those normally attendant to arrest and custody, which law enforcement officers should know are reasonably likely to elicit incriminating statements. Rhode Island v. Innis (1980), 446 U.S. 291. However, law enforcement officers are not responsible for the unforeseeable results of their words or actions. Id. As clearly stated by the United States Supreme Court in Miranda, supra:
 * * * Any statement given freely and voluntarily without any compelling influences is of course, admissible in evidence. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. [Id. at 478.]
In order to "determine whether a suspect has been `interrogated,' the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion." State v. Tucker (1998),81 Ohio St.3d 431, 436.
In this case, we find no evidence of coercion or interrogation by Officer Kise or Officer Beavers, who was also present at the time. At the hearing on defendant's motion to suppress, the trial court applied the correct standard as well as reasoned analysis. Moreover, the record fully supports the trial court's finding that defendant's comment was freely given and not the result of any interrogation or deception by Officers Kise or Beavers. In light of these findings, we overrule defendant's fifth assignment of error.
In his sixth assignment of error, defendant claims that his convictions stand against the sufficiency and weight of the evidence. Sufficiency is a term of art used to describe that evidence which, as a matter of law, is legally sufficient to support a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is synonymous with adequacy. When reviewing a conviction challenged on the basis of insufficient evidence, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found each of the essential elements of the crime proven beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
Conversely, when reviewing a verdict challenged to be against the manifest weight of the evidence, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and, further, created such a manifest miscarriage of justice that the judgment or conviction must be reversed. As set forth in Thompkins, supra, the "manifest weight" of the evidence is:
 "* * * the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) [Id. at 387, citing Blacks Law Dictionary (6 Ed. 1990) 1594.]
The Ohio Supreme Court continued:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." [Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.]
In his sufficiency challenge, defendant maintains the evidence presented during the course of his trial was legally insufficient to support his convictions for attempted aggravated murder. Defendant claims this was so because the only evidence that Leslita Williams was injured was the testimony of Sterling Robinson, who bore witness that Williams had been shot in the leg. As for the other victims, defendant claims there was insufficient evidence that he possessed the specific intent to attempt to cause the death of those wounded during the melee.
When viewed in a light most favorable to the prosecution, a rational juror could easily find from the evidence presented, including but not limited to the testimony of Sterling Robinson, that the gunmen entered Nelson Price's apartment with the intent on shooting and killing whomever they found inside. As noted by the prosecution, this case is similar to State v. Conley (Apr. 9, 1998), Franklin App. No. 97APA05-701, unreported. In that case, several men entered an apartment and opened fire. As a result of the gunfire, a woman on the first floor of the apartment and a man on the second floor died. In attempt to avoid conviction, defendant argued that the evidence was insufficient to support his conviction for the man's murder because the evidence showed that he had not gone upstairs. We rejected this argument explaining:
 * * * Appellant was with three other men who drove to Price's residence, kicked in the door and fired guns killing two people. Although the evidence shows that appellant did not go upstairs where Martin was killed, participation and criminal intent with regard to Martin's killing may be inferred from his presence, companionship and conduct before and after the offense was committed.
 * * * The actions of the men show a common design to commit a crime and, even if appellant did not shoot and kill Martin, his actions and his presence, companionship and conduct before and after the murders were committed constitute aiding and abetting such that appellant could be convicted of Martin's murder.
Defendant's reliance upon a statement of one witness that the person armed with the shotgun asked another gunman why he shot the women, as well as his reliance upon his own denial of shooting the women to a friend, are unconvincing. The evidence was more than sufficient to support defendant's convictions for attempted aggravated murder.
As noted, defendant also claims that his convictions stand against the weight of the evidence. Having carefully and closely reviewed the entire record of this proceeding, and having independently weighed the evidence and judged the credibility of the witnesses, we are unconvinced that the jury clearly lost its way.
In Thompkins, supra, the Ohio Supreme Court ruled that a reversal of a conviction as being against the manifest weight of the evidence is an act reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. While the majority of the witnesses in this case were not model citizens, it was for the trier of fact to judge the credibility of those witnesses and to give appropriate weight to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230.
The evidence showed that from ten to twenty people were gathered in Nelson Price's diminutive apartment on the evening of April 18, 1994. At about 4 a.m., the door to that apartment was kicked in, and several armed, masked men entered. One of those men, defendant, was armed with a shotgun which he used to kill James McKinney by shooting him in the face. McKinney, who was seated adjacent to the front door, was seated with several women in the front room of the apartment. After McKinney was killed, the apartment was riddled with bullets from at least two other handguns. At least fourteen spent shell casings from a 9mm weapon were recovered from the crime scene in addition to nine bullet fragments from a 9mm weapon, and five from a separate larger caliber weapon. Five women were hit by the gunfire, some several times.
Many of the people present in the apartment at the time of the shooting knew defendant, and some had known him for several years. Many of those individuals testified that they recognized defendant by sight, build, and by voice. Another witness, Kevin Morton, testified that he left the apartment shortly before the shooting and noticed defendant in a car outside of the apartment. There was also evidence that defendant admitted shooting McKinney to friends, and that the day after the shooting ran from police after committing a minor traffic offense in a vehicle that contained a sawed-off shotgun.
Vatena Hite testified that defendant, whom she knew from high school, visited her several times in the early morning hours on the days leading up to the shooting. She also testified that, on the night of the shooting, she saw two people dressed in black and wearing masks approach Nelson Price's apartment. According to Hite, one of those individuals had the same physical characteristics as defendant. Finally, there was evidence that defendant planned to rob Price prior to the shooting, and that a boot print from the front door of the apartment matched boots taken from defendant.
After reviewing all of the evidence, we are unable to conclude that defendant's convictions stand against the manifest weight of the evidence. Accordingly, defendant's sixth assignment of error is overruled.
In his seventh assignment of error, defendant claims that the trial court erred when it refused to give his jury instruction regarding the credibility of a witness who testifies pursuant to a plea agreement. While defendant appears to cast his argument as if the trial court completely failed to instruct the jury as to the manner in which they should assess the credibility of the witnesses, that is not the case. In this case, the court instructed the jury in that regard as follows:
 You will apply the test of truthfulness which you apply in your daily lives. These tests include the appearance of each witness upon the witness stand; the witness's manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear, and know the things concerning the testimony; the accuracy of the witness's memory; their frankness or lack of it; intelligence; interest and bias, if any; together with all of the facts and circumstances surrounding the testimony. Applying these tests you will assign to the testimony of each witness such weight as you deem proper. [Tr. Vol. VII, 1373-1374.]
The trial court was not required to use defendant's proffered instruction. Rather, its obligation was to give a correct instruction. State v. Guster (1981), 66 Ohio St.2d 266.
At trial, the fact that certain witnesses had received a benefit in return for their testimony was clearly placed before the jury by defense counsel. This, when coupled with the court's instruction regarding assessing the credibility of testimony, sufficiently instructed the jury regarding its duty to assess the credibility of the witnesses and testimony given at trial.
There is no question that the credence given to the eyewitnesses' testimony played an important role in this case. However, that is neither wrong, unlawful, nor suspect. The jury in this case, as almost all juries are, was in the best position to view the witnesses, evaluate their demeanor and credibility, and determine the appropriate weight to be given to the evidence. Defendant's seventh assignment of error is overruled.
Defendant claims in his eighth assignment of error that the trial court erred when it refused to require the prosecution to provide defense counsel with an accurate witness list, and when it failed to require the prosecution to provide counsel with exculpatory evidence in a timely manner. We find no such refusal.
Defendant claims that the assistant prosecutor failed to provide defense counsel with a witness list that comports with Crim.R. 16(B)(1)(e), which provides, in pertinent part:
 * * * Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. * * * [Emphasis added.]
In this case, the trial court never "refused" to require the prosecution to provide defendant with discovery. To be more precise, defendant claims that the prosecution gave defense counsel too much discovery when it initially turned over a witness list containing approximately nine hundred names. The record does not contain a great deal of information on this issue, but it appears to have been first addressed at a pre-trial motion hearing held on July 12, 2000. During the course of that hearing, the prosecution explained that its initial list contained all of the names which appeared in its files relating to this crime. The assistant prosecutor explained that some of the potential witnesses were being transported from federal prison and that, because he had not yet talked with these witnesses, a final decision had not yet been made as to whether these individuals would be called to testify. The trial court overruled defendant's motion, apparently leaving the issue with an understanding that the prosecutor would narrow its witness list as soon as possible. The record reveals that by July 20, 2000, the prosecutor had narrowed its witness list to only those witnesses which it intended to call at trial. On the record, defense counsel acknowledged that he had met with the prosecutor the prior evening, at which time both reviewed those witnesses the prosecutor intended to call, along with a synopsis of what those individuals would testify to. In light of the evidence contained in the record, we are unable to find that the trial court abused its discretion.
Defendant also maintains that the prosecutor failed to provide trial counsel with exculpatory evidence in a timely manner, i.e., prior to trial. However, there is no requirement that exculpatory evidence be disclosed prior to trial, only that it be disclosed before the trial is over. State v. Wickline (1990), 50 Ohio St.3d 114. Defendant's eighth assignment of error is, therefore, overruled.
Defendant contends in his ninth assignment of error that he was deprived of his constitutional right to the effective assistance of counsel in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I, of the Ohio Constitution.
In order to demonstrate that he has been denied the effective assistance of trial counsel, defendant must first show that counsel's performance was deficient. State v. Bradley (1989), 42 Ohio St.3d 136. We note the presumption echoed by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 687, that a properly licensed attorney is presumed competent. As such, judicial scrutiny of a trial attorney's performance is appropriately deferential.
As the United States Supreme Court noted in Strickland, "[t]here are countless ways to provide effective assistance in any given case." Id. at 689. As such, the essential question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690. This requires being able to show that trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by theSixth Amendment.
Second, defendant must show that counsel's performance caused him harm. In order to demonstrate harm, defendant must show that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph two of the syllabus.
Defendant's claim of ineffective assistance of trial counsel is a typical fall-back claim which is supported by reference to other substantive assignments of error. In his first claim, defendant argues trial counsel was ineffective as counsel did not file a motion to dismiss his indictment as argued in his third assignment of error. In his second claim, defendant argues that counsel was ineffective for failing to move for a continuance when allegedly exculpatory evidence was revealed as argued in his second, fourth, and eighth assignments of error. Finally, defendant argues that counsel was ineffective for failing to object during the midst of the assistant prosecutor's closing argument, as argued in his second assignment of error. However, because we found no merit to these assignments of error, we are unable to conclude that trial counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Strickland, supra. Therefore, defendant's ninth assignment of error is overruled.
In his tenth assignment of error, defendant complains the trial court improperly admitted a statement made out of court by defendant to Nelson Price. Price died in a motor vehicle accident approximately five years before defendant's trial and was obviously unable to testify. Prior to his death, however, Price was allegedly dealing drugs with another individual named Kevin Morton. At trial, Morton testified that, about a week prior to the shooting, defendant called Price and asked to borrow a firearm. Price purportedly told defendant that Morton had one, and defendant asked to speak with him. According to Morton, Price handed him the phone, at which time defendant asked to borrow his gun. Morton refused and handed the phone back to Price. Price then spoke a brief moment longer with defendant, and hung up the telephone. Immediately thereafter, Price told Morton that defendant had threatened him, stating that Morton should be sure to carry his gun since he would not loan it to defendant. Defendant's objection to this testimony was overruled on the basis that Price's statement was admissible pursuant to Evid.R. 803(1).
The trial court is permitted wide latitude when determining whether to admit or exclude evidence. Evid.R. 803(1) contains an exception to the hearsay rule and provides that a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not excludable unless the circumstances indicate a lack of trustworthiness. Defendant argues that Evid.R. 803(1) is inapplicable because "[n]either Mr. Price, his statement, nor Mr. Morton are trustworthy." According to defendant, this is so because both individuals were reputed drug dealers.
We are again reminded that a trial court has broad discretion in the admission or exclusion of evidence, and unless that discretion has clearly been abused, an appellate court should be slow to interfere. Maurer, supra, at 265, quoting State v. Hymore (1967), 9 Ohio St.2d 122,128. The trial court was well aware of the reputation of Price and Morton as drug dealers. However, that fact alone does not somehow make the trial court's decision to admit this evidence unreasonable, arbitrary, or unconscionable. State v. Lowe (1994), 69 Ohio St.3d 527. As such defendant's tenth assignment of error is overruled.
For the foregoing reasons, all ten of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Defendant raises several other claims in support of this assignment of error, however, in support of these claims defendant merely directs the court's attention to his other assignments of error. As such, these claims will be dealt with in our discussion of those assignments.